# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARTIN'S FAMOUS PASTRY SHOPPE, INC., | : |
| Plaintiff | : CIVIL ACTION NO. _____ |
| v. | : JURY TRIAL DEMANDED |
| TECNOPOOL, S.P.A., | : |
| Defendant | : |

## COMPLAINT

Plaintiff Martin's Famous Pastry Shoppe, Inc., by and through its undersigned counsel, hereby brings the following Complaint against Defendant Tecnopool, S.p.A., and in support thereof avers as follows:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a)(2) as there is complete diversity of citizenship between Plaintiff and Defendant, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

3. Plaintiff Martin's Famous Pastry Shoppe, Inc. ("Martin's"), is a Pennsylvania corporation with offices at 1000 Potato Roll Lane, Chambersburg, Pennsylvania.

4. Defendant Tecnopool, S.p.A. ("Tecnopool"), is an Italian *societá per azioni* (publicly traded company) with offices at Via Buonarroti, 81, 35010 – San Giorgio in Bosco (PD) – Italy.

## FACTUAL BACKGROUND

5. Martin's is a family owned and operated bread and roll manufacturer.

6. Tecnopool designs, manufactures, and installs food processing equipment.

7. On October 21, 2013, Martin's contracted with Tecnopool for the purchase and installation of two spiral conveyors (sometimes referred to as "proofing spirals"; hereinafter, "Spirals").  A copy of the Purchase Order is attached hereto as Exhibit A.

8. The Spirals carry raw bread dough on baking pans through a heated and humidity-controlled room to allow the bread dough to rise before baking.

9. The equipment consists of two edge-driven spiral conveyors:  Spiral A and Spiral B.

10. Spiral A (referred to as the "up-go" spiral), carries the pans up to the top of the room where it transfers the pans to Spiral B (referred to as the "down-go" spiral), which brings the pans back to floor level to exit the room and travel toward the oven.

11. The total purchase price of the Spirals, inclusive of installation and all related costs, was €669,098.66, or approximately $931,987.52.  *See* Exhibit A.  As described below, Martin's has incurred damages in excess of the purchase price.

12. Martin's paid Tecnopool 30% of the purchase price as a down payment, and made incremental payments thereafter.  *See* Invoice, attached hereto as Exhibit B.

13. To date, Martin's has paid Tecnopool a total of €607,157.30 (90% of the purchase price), which equals $835,185.84.

14. Tecnopool completed the installation of the Spirals on April 11, 2014.

15. Approximately seven days after installation was complete, Martin's began to notice that plastic pieces from the Spirals were breaking off and falling into the area where uncooked bread dough was being transported on the Spirals.

16.  Martin's immediately reported the shedding plastic to Tecnopool.

17. Over the course of the next several months, Tecnopool attempted to determine the cause of the shedding plastic and tried a series of fixes.

18. The majority of these efforts focused on cutting or removing parts of the conveyor belts on the Spirals.

19. These repairs were covered by Tecnopool's warranty, and were generally accomplished with labor provided by Martin's, while Tecnopool provided management and oversight.

20. Martin's never attempted any repairs without Tecnopool approval and oversight.

21. In order to make the repairs, Martin's had to shut down its production lines several times, which added to Martin's costs incurred as a result of the Spirals' failure.

22. Unfortunately, none of these attempted repairs were successful, and the Spirals continued to shed plastic pieces, presenting a danger the plastic would get into Martin's baked goods.

23. In April and May 2015 Tecnopool replaced the entire conveyor belt on Spiral A as another attempt to solve the problem.

24. The new conveyor belt—as well as Spiral B's original conveyor belt—continued to shed plastic.

25. On August 31, 2015, Martin's notified Tecnopool that the Spirals remained defective and that it wished to unwind the transaction. *See* August 31, 2015 Letter, attached hereto as Exhibit C.

26. On September 15, 2015, representatives from Martin's and Tecnopool met while at a trade show in Germany.

27. At this meeting, Tecnopool proposed another technical fix for the shedding plastic, and Martin's agreed to try this fix. *See* September 15, 2015 Letter, attached hereto as Exhibit D.

28. On September 30, 2015 Tecnopool notified Martin's that Tecnopool had tested this proposed fix and concluded that the fix was not a viable technical solution. *See* Email from Leopoldo Lago to Steve Mitchell dated September 30, 2015, attached hereto as Exhibit E.

29. At this time, Tecnopool proposed yet another technical fix for the shedding plastic. A test of this fix was conducted on Spiral A starting October 26, 2015.

30. This proposed fix introduced new food safety and production related issues and, accordingly, Tecnopool halted the test on October 31, 2015.

31. Martin's notified Tecnopool on November 30, 2015 that it did not wish to try any additional fixes, but rather wished to unwind the transaction. *See* November 30, 2015 Letter, attached hereto as Exhibit F.

32. On December 10, 2015, Tecnopool responded by letter, indicating that it would not agree to rescind the contract. *See* December 10, 2015 Letter, attached hereto as Exhibit G.

33.     Specifically, Tecnopool stated that the rate of occurrence of shedding plastic was inconsequential, and that, "from a technical standpoint . . . [the system] works regularly."  *See* Exhibit G.

34.     Martin's responded by letter dated January 7, 2016 and explained that the persistent introduction of these contaminants into its product and production environment is wholly unacceptable.  *See* January 7, 2016 Letter, attached hereto as Exhibit H.

35.     Martin's indicated that it would remove the Spirals from its production line on January 17, 2016, and again requested that the parties discuss rescinding the contract.  *See* Exhibit H.

36.     Pursuant to the terms of the Purchase Order, Martin's also offered to engage in mediation to resolve this dispute, and requested that Tecnopool respond to this offer within 30 days.  *See* Exhibit H.

37.     On January 15, 2016, Tecnopool visited with Martin's personnel in Chambersburg to request more time to find a solution.  Martin's rejected Tecnopool's request and confirmed that the Spirals would be removed beginning January 17, 2016.

38.     On January 16, 2016, Tecnopool responded by letter and restated its position that the Spirals were operational, and suggested yet another technical fix.  *See* January 16, 2016 Letter, attached hereto as Exhibit I.

39. Martin's declined Tecnopool's offer to try yet another repair.

40. Tecnopool initially represented that the shedding plastic would last no more than three months.

41. Between May 2015 and January 2016, Martin's found 67 pieces of plastic that had broken off of the belt on Spiral A alone.

42. Of those 67 pieces, 17 were found on the product.

43. The shedding plastic poses a particular risk regarding food safety because if gone undetected it could be baked into the bread.

44. The Purchase Order, which was accepted by Tecnopool, requires that disputes surrounding this transaction be resolved in this Court.

45. The Purchase Order also requires that the parties attempt to settle any disputes via mediation before resorting to litigation.

46. Martin's offered to engage Tecnopool in mediation on January 7, 2016, and gave Tecnopool 30 days to respond.

47. Tecnopool did not respond to Martin's request to engage a mediator.

48. Accordingly, Tecnopool has rejected the offer of mediation.

49. Martin's has satisfied all conditions precedent to the filing of this civil action.

## COUNT I – BREACH OF CONTRACT

50. Paragraphs 1 through 49, above, are incorporated herein by reference as if set forth in full.

51. Martin's entered into a written agreement with Tecnopool for the purchase and installation of two Spirals.

52. Martin's agreed to pay €669,098.66 for the Spirals ($931,987.52), and has paid €607,157.30 ($835,185.84) to date.

53. Martin's substantially performed its duties under the agreement.

54. Tecnopool breached its contractual obligations by failing to provide satisfactory goods to Martin's.

55. Martin's has been damaged by Tecnopool's breach of its contractual obligations.

56. In addition to the purchase price of the Spirals, Martin's has incurred at least $389,741 of expenses resulting from the Spirals' failure.  These expenses include, but are not limited to:  additional maintenance personnel and contract labor to perform repairs, additional labor to watch for plastic pieces, overtime pay to make up for production line downtime during repairs, and lodging for Tecnopool's technicians.

57. Accordingly, Martin's has been damaged in an amount not less than $1,224,926.84.

58.   Martin's has also suffered damages in amounts that are not readily quantified, such as the time devoted to solving this problem by salaried engineer personnel.

WHEREFORE, Plaintiff Martin's Famous Pastry Shoppe, Inc., requests judgment in its favor and against Defendant Tecnopool, S.p.A. in the amount of $1,224,926.84, plus all other legally recoverable damages Martin's has incurred, interest, costs, and any other relief that this Court deems appropriate.

### COUNT II – BREACH OF EXPRESS WARRANTY

59.   Paragraphs 1 through 58, above, are incorporated herein by reference as if set forth in full.

60.   Tecnopool made express promises regarding the material, workmanship, and performance of the Spirals, and specifically promised that its equipment would be free of defects in materials and workmanship.

61.   These promises are a part of the agreement between Martin's and Tecnopool.

62.   The Spirals are defective, in that they shed plastic.

63.   Tecnopool has breached the express warranty.

64.   As a result of Tecnopool's breach, Martin's has been damaged.

WHEREFORE, Plaintiff Martin's Famous Pastry Shoppe, Inc., requests judgment in its favor and against Defendant Tecnopool, S.p.A. in the amount of

$1,224,926.84, plus all other legally recoverable damages Martin's has incurred, interest, costs, and any other relief that this Court deems appropriate.

## COUNT III – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

65. Paragraphs 1 through 64, above, are incorporated herein by reference as if set forth in full.

66. Tecnopool is a merchant within the meaning of the Pennsylvania Commercial Code. 13 Pa. C.S. § 2314.

67. The Spirals are goods within the meaning of the Pennsylvania Commercial Code. 13 Pa. C.S. § 2314.

68. The Spirals are not merchantable because (1) they do not pass without objection in the trade under the contract description, and (2) they are not fit for the ordinary purpose for which such goods are used in that they shed pieces of plastic, and therefore, cannot be used to carry the raw bread dough during the rising process, as was the intention of Martin's when it purchased said Spirals.

69. The Spirals are thus not suitable for the purpose for which they are designed, they are not free from significant defects, they do not perform in the way that goods of that kind should perform, and are not of a reasonable quality within expected variations and for the ordinary purpose for which they are used. *Gall v. Allegheny County Health Dept.*, 555 A.2d 786, 789-90 (Pa. 1989).

70. Martin's has incurred damages due to the defective Spirals.

WHEREFORE, Plaintiff Martin's Famous Pastry Shoppe, Inc., requests judgment in its favor and against Defendant Tecnopool, S.p.A. in the amount of $1,224,926.84, plus all other legally recoverable damages Martin's has incurred, interest, costs, and any other relief that this Court deems appropriate.

### COUNT IV – BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

71. Paragraphs 1 through 70, above, are incorporated herein by reference as if set forth in full.

72. Martin's used the Spirals to carry raw bread dough on baking pans through a heated and humidity-controlled room to allow the bread dough to rise before baking.

73. In Pennsylvania, an implied warranty of fitness for a particular purpose is breached when a seller, on whose skill and judgment a buyer relies and who has reason to know, at the time of contracting, the particular purpose for which the goods are required, fails to provide goods that perform to the specific use contemplated by the buyer. *Gall*, 555 A.2d at 786.

74. Martin's relied on Tecnopool's skill and judgment regarding what equipment was best suited to Martin's needs.

75. At the time of the sale of the Spirals, Tecnopool had reason to know what Martin's needs were and the purpose for which Martin's intended to use the Spirals.

76. The Spirals have repeatedly failed by shedding plastic, making the Spirals unusable to carry raw bread dough during the rising process, and thus Tecnopool has failed to provide goods that perform to the specific use contemplated by Martin's.

77. Martin's has been damaged by Tecnopool's failure to provide goods that could be used for Martin's needs.

WHEREFORE, Plaintiff Martin's Famous Pastry Shoppe, Inc., requests judgment in its favor and against Defendant Tecnopool, S.p.A. in the amount of $1,224,926.84, plus all other legally recoverable damages Martin's has incurred, interest, costs, and any other relief that this Court deems appropriate.

        McNEES WALLACE & NURICK LLC

        */s/ James P. DeAngelo*
By_____
        James P. DeAngelo
        I.D. No. 62377
        Sarah Hyser-Staub
        I.D. No. 315989
        100 Pine Street
        P.O. Box 1166
        Harrisburg, PA  17108-1166
        Phone:  717 232-8000

Dated: February 16, 2016        *Attorneys for Plaintiff*